UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATASHA KNOX,<br><br>    Plaintiff,<br><br>v.<br><br>CRC MANAGEMENT CO., LLC, CLEAN RITE CENTERS-3353 BOSTON RD., LLC, 4352 BRONX BLVD LAUNDROMAT, LLC, CECILIA ASHMEADE, individually, and KEN FERRIS, individually,<br><br>    Defendants. | Case No.: 20-CV-04073 |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF SUMMARY JUDGMENT**

Dated:  New York, New York
       April 29, 2022

Jeremi L. Chylinski, Esq.
GORDON & REES, LLP
One Battery Park Plaza, 28th Floor
New York, New York 10004
P: (917) 650-0050
F: (212) 269-5505
jchylinski@grsm.com

*Attorneys For Defendants CRC Management Co., LLC,
Clean Rite Centers, LLC, 3533 Boston Road, LLC, and 4352 Bronx Boulevard Laundromat, LLC*

# **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ...................................................................................................1

II. STATEMENT OF FACTS ..........................................................................................................2

    A. Clean Rite Centers, LLC ................................................................................................2

    B. Plaintiff's Employment With Clean Rite ........................................................................2

    C. Clean Rite's Anti-Theft Policy ......................................................................................3

    D. Plaintiff Stole Money From The Cash Register .............................................................3

    E. Plaintiff Never Complained Of Discrimination Or Harassment ....................................4

    F. Plaintiff's Disability Was Accommodated ....................................................................4

    G. Plaintiff Did Not Complain About Perceived Discrimination or Harassment To Neville Baptiste .............................................................................................................5

    H. Plaintiff Cannot Maintain Any Wage And Hour Claims ................................................6

    I. The Employee Handbook Contains Clean Rite's Anti-Discrimination And Anti-Harassment Procedures And Complaint Procedure .......................................................7

III. ARGUMENT ..............................................................................................................................8

    A. Summary Judgment Standard ........................................................................................8

    B. Plaintiff's Race Discrimination Claims Must Be Dismissed .........................................9

    C. Plaintiff's Disability Discrimination Claims Fail, As a Matter Of Law ......................10

    D. Plaintiff Has Not And Cannot Allege A Viable Retaliation Claim ..............................11

    E. To The Extent Plaintiff Is Attempting To Allege Claims for Harassment/Hostile Work Environment, Those Claims Must Be Dismissed .............................................13

    F. Plaintiff's Aiding And Abetting Claims Are Nonstarters ............................................15

    G. Plaintiff's Wage And Hour Claims Are Unsupported By The Record, And Must Be Dismissed ................................................................................................................15

IV. CONCLUSION .........................................................................................................................16

Defendants CRC Management Co., LLC, Clean Rite Centers, LLC (incorrectly named as "Clean Rite Centers-3533 Boston Road, LLC"), 3533 Boston Road, LLC, and 4352 Bronx Boulevard Laundromat, LLC respectfully submit this memorandum of law in support of their Fed. R. Civ. P. Rule 56 motion for summary judgment seeking the dismissal of Plaintiff Natasha Knox's Complaint ("Complaint") in its entirety, and with prejudice.

## I.   PRELIMINARY STATEMENT

Now that Plaintiff has been compelled to defend her claims through discovery, the record makes clear that no such defense exists. Put simply, Plaintiff was terminated for theft. On the morning of April 14, 2019, Plaintiff took money from the register at Clean Rite's 4741 White Plains Road, Bronx, New York location. The Team Leader for that location, Ashley Peguero, spoke with Plaintiff about her theft the next day, April 15, 2019. Plaintiff admitted she took the money and, incredibly, stated that she would not return it.

Plaintiff now self-servingly claims that she was "informed when she was first hired that Clean-Rite would pay for her rides to and from work and that she could use money from the cash register for this purpose so long as she provided a receipt." This is ridiculous and not true. It is against company policy to take money from the register, or anywhere else, without permission. When Plaintiff took money from the register at the White Plains Road location on April 14, 2019, she did so without permission – constituting theft.

In light of her admission to theft, and refusal to return the money, Plaintiff was terminated effective April 18, 2019. Her race, alleged disability, and phantom complaints were not a factor in this determination. Plaintiff's discrimination and retaliation claims should be dismissed for this reason alone.

1

Plaintiff's wage and hour claims fare no better.  The record proves that Plaintiff was paid for all hours worked, paid at the premium time-and-a-half rate for all hours over forty, and was provided with pay statements and the required Notice of Pay Rate and Payday.  Thus, her wage claims must also be dismissed, as a matter of law.

## II.  STATEMENT OF FACTS[1]

### A.  Clean Rite Centers, LLC[2]

CRC Management Co., LLC ("Clean Rite") operates approximately seventy (70) laundromats in New York, Ohio, Maryland, and Pennsylvania. (Defs. Stmt., ¶ 1.)  CRC Management Co., LLC is a wholly owned subsidiary of Clean Rite Centers, LLC. (Defs. Stmt., ¶ 2.)  All Clean Rite laundromats are open twenty-four (24) hours and feature numerous washers and dryers, ample folding tables and laundry carts, free parking for customers, and a knowledgeable and friendly staff.  (Id, ¶ 3.)

### B.  Plaintiff's Employment With Clean Rite

Plaintiff applied for a position with Clean Rite on December 17, 2018. (Id, ¶ 4.)  She began her employment with Clean Rite as a Customer Service Attendant on December 21, 2018.  (Id, ¶ 5.)

As a Customer Service Attendant, Plaintiff's duties included the following: "greet customers, wash and fold, make sure the logbook was documented properly, make sure all the inventory was correct, . . . make sure . . . the laundromat was cleaned, all carts were put back, washers and driers were clean, . . . dealing with ordering tickets as far as doing wash and fold, taking in orders, getting up pickup, . . . [t]aking out the trash, sorting out the garbage . . .

---

[1] All references herein are to Defendants' Rule 56.1 Statement Of Undisputed Material Facts, cited as "Defs. Stmt. ¶".
[2] Headings are used in this Statement solely for organizational purposes and the convenience of the reader.  They are not intended to be, nor should they be construed as, assertions of fact.

2

[d]elegating the customers, . . . [and] making sure that everyone has a card." (Id, ¶ 6.) During her employment, Plaintiff worked mainly at Clean Rite's 4741 White Plains Road, Bronx, New York location. (Id, ¶ 7.)

### C.     Clean Rite's Anti-Theft Policy

Upon her hire, Plaintiff received a copy of the Employee Handbook and acknowledged her receipt of and agreement to be bound by the policies contained in that Handbook on December 17, 2018. (Id, ¶ 8.) Clean Rite's anti-theft policy, which is contained in the Handbook, is that theft of any kind will result in disciplinary action up to and including termination. (Id, ¶ 9.)

### D.     Plaintiff Stole Money From The Cash Register

On April 14, 2019, Plaintiff took money from the cash register at the 4741 White Plains Road location without prior approval. (Id, ¶ 10.) Although Clean Rite reimburses employees for cab rides and other out-of-pocket expenses from time-to-time, no employee is ever permitted to take money from a cash register without prior approval. (Id, ¶ 11.)

Plaintiff self-servingly claims that she was "informed when she was first hired that Clean-Rite would pay for her rides to and from work and that she could use money from the cash register for this purpose so long as she provided a receipt." (Id, ¶ 12.) This is false. (Id, ¶ 13.) It is against company policy to take money from the register, or anywhere else, without permission. (Id, ¶ 14.)

When Plaintiff took money from the register at the White Plains Road location on April 14, 2019, she did so without permission. (Id, ¶ 15.) Thus, Plaintiff engaged in theft on April 14, 2019. (Id, ¶ 16.)

The Team Leader for the White Plains Road location – Ashley Peguero – contacted Plaintiff about her theft on April 15, 2019. (Id, ¶ 17.) During their conversation, Plaintiff admitted she took money from the register. (Id, ¶ 18.) Plaintiff was defiant, however, and stated that she would not return the money. (Id, ¶ 19.)

In light of her admission to theft, and refusal to return the money, Neville Baptiste, the Regional Leader for New York City, Ohio, Maryland and Pennsylvania directed Ken Ferris – the District Lead for the White Plains Road location – to terminate Plaintiff's employment. (Id, ¶ 20.) Plaintiff was terminated effective April 18, 2019. (Id, ¶ 21.)

### E. Plaintiff Never Complained Of Discrimination Or Harassment

Plaintiff claims that, beginning in February 2019, her "work environment became permeated with racial harassment from [Cecilia Ashmeade]," a colleague who, like Plaintiff, is also of Jamaican descent. (Id, ¶ 22.) Plaintiff alleges that Ashmeade "began making daily criticisms of [her] that she was too 'hood' and 'ghetto' to work" for Clean Rite and that "the Yankee in [Plaintiff made her] timid." (Id, ¶ 23.)

Plaintiff alleges that she "complained of repeated racist harassment" by Ashmeade to the former District Leader for the White Plains Road location, Vincent Butler, in late February 2019. (Id, ¶ 24.) According to Plaintiff, Butler informed her "that there would be a meeting concerning the harassment," but this meeting never happened. (Id, ¶ 25.)

There is no evidence supporting these allegations. (Id, ¶ 26.) This is because Plaintiff never complained to anyone at Clean Rite, including Butler, about perceived harassment or discrimination. (Id, ¶ 27.) Instead, she complained only about alleged missing wages for hours worked, which was quickly rectified by Clean Rite. (Id, ¶ 28.)

### F. Plaintiff's Disability Was Accommodated

Plaintiff further alleges that, on March 5, 2019, she was treated for a broken finger sustained in a car accident, and the treating physician instructed her to not lift more than 25 pounds at work. (Id, ¶ 29.) Plaintiff claims she informed Ashmeade that "she would require an accommodation of lifting no more than twenty-five pounds due to the continuing treatment of her

4

broken finger" when she returned to work on March 6, 2019, but her alleged disability was not accommodated. (Id, ¶ 30.)

This contradicts Plaintiff's statement to Ferris only a few days later, on Mach 11, 2019. (Id, ¶ 31.)  As noted in a contemporaneous written statement prepared by Ferris – who replaced Butler as the District Lead on or about March 11, 2019, and thereby assumed oversight of the White Plains Road location – Plaintiff indicated to Ferris when he visited the location on March 11 that her "minimum accommodations" were already in place. (Id, ¶ 32.)

### G. Plaintiff Did Not Complain About Perceived Discrimination or Harassment To Neville Baptiste

Plaintiff also claims that she called Clean Rite's corporate office on March 11, 2019 "to complain about her lack of accommodation as well as the racist harassment she was receiving." (Id, ¶ 33.) This is not true, either. (Id, ¶ 34.)

Plaintiff did, in fact, call the corporate office, but only to complain about unpaid wages – which, as previously noted, were investigated and rectified. (Id, ¶ 35.) Plaintiff did not complain about perceived harassment or an accommodation during this call. (Id, ¶ 36.) Rather, Neville Baptiste– whom Plaintiff misidentifies as a "Clean Rite human resources representative" – spoke with Plaintiff on March 13, 2019 in response to her March 11, 2019 call to the corporate office. (Id, ¶ 37.) Based on that conversation, Baptiste and Ferris investigated whether Plaintiff was owed unpaid wages, and ensured that she was paid for all hours worked. (Id, ¶ 38.) Baptiste did not discuss alleged discrimination, harassment, or an accommodation with Plaintiff, because she never raised any such issues with him. (Id, ¶ 39.)

Plaintiff also claims that Baptiste directed her to forward a doctor's note detailing her injury and limitations during the March 13 call. (Id, ¶ 40.) This is false. (Id, ¶ 41.) Again, it must be noted that Plaintiff did not complain about an accommodation to Baptiste. (Id, ¶ 42.) She indicated

5

only that she had a doctor's appointment that week and would miss some work time to attend the appointment. (Id, ¶ 43.) Baptiste instructed Plaintiff to provide a doctor's note for her appointment – and not, as she claims, for an alleged disability. (Id, ¶ 44.)

Plaintiff further alleges that after she "informed [Baptiste] about the racist harassment she was receiving as well as [Clean Rite's] failure to accommodate her disability" during the March 13 call, and Baptiste responded "we might need to have a conversation if you can't do your job." (Id, ¶ 45.) This is also false. (Id, ¶ 46.) Plaintiff did not complain about harassment, discrimination or mention an accommodation to Baptiste. (Id, ¶ 47.) It is, therefore, axiomatic that Baptiste did not address an accommodation or harassment given that Plaintiff never complained about those issues in the first place. (Id, ¶ 48.)

Finally, Plaintiff claims that at some point in mid-March 2019, Ferris "began participating in the racist harassment," including informing Plaintiff that she "looked like Aunt Jemima" on a day she wore a scarf on her head and that Ferris criticized her for "talking Jamaican" when she was "upset." (Id, ¶ 49.) These allegations are nonsensical given that Ferris was a senior member of Clean Rite's management staff responsible for managing Clean Rite's predominately Black and/or African America workforce. (Id, ¶ 50.)

### H. Plaintiff Cannot Maintain Any Wage And Hour Claims

Plaintiff claims that Defendants failed to pay her at the applicable minimum hourly rate. (Id, ¶ 51.) This is not true. (Id, ¶ 52.) Plaintiff was paid $15.00 per hour for all hours worked under forty hours in a one week period. (Id, ¶ 53.)

Plaintiff also claims that she was not paid at the premium overtime rate for all hours worked over forty hours in a one week period. (Id, ¶ 54.) This is not true, either. (Id, ¶ 55.) Plaintiff was paid at the premium rate of $22.50 for all hours worked over forty hours in a one week period. (Id, ¶ 56.)

Plaintiff also alleges that Defendants failed to provide her with a written notice of her rate of pay, regular pay day, and such other information as required by NYLL §195(1).  (Id, ¶ 57.)  This, too, is false.  (Id, ¶ 58.)  Plaintiff acknowledged that she received a Notice of Acknowledgement of Pay Rate and Pay Day in English – her self-identified native language – on December 17, 2018.  (Id, ¶ 59.)

Plaintiff claims that Defendants did not provide her with wage statements upon each payment of wages, as required by NYLL 195(3).  (Id, ¶ 60.)  This is not true.  (Id, ¶ 61.)  In compliance with NYLL 195(3), Plaintiff was provided with Pay Summaries for each pay period. (Id, ¶ 62.)

### I.  The Employee Handbook Contains Clean Rite's Anti-Discrimination And Anti-Harassment Procedures And Complaint Procedure

Clean Rite is "committed to providing a work environment free from all forms of unlawful discrimination, including sexual harassment and retaliation."  (Id, ¶ 63.)  Clean Rite specifically "prohibits and does not tolerate discrimination against employees, applicants, or any other covered persons because of race, color, national origin, ancestry, citizenship, religion, creed, sex (including pregnancy), gender identity and expression (including status as a transgender or transsexual individual), sexual orientation, age, disability, genetic information, service in armed forces, marital status, familial status, predisposing genetic characteristic or any other characteristic protected under applicable federal, state, or local law."  (Id, ¶ 64.)

Clean Rite also "prohibits retaliation for good faith complaints of discrimination" and "expressly prohibits any form of discipline, reprisal, intimidation, or retaliation for good faith reports or complaints of incidents of discrimination of any kind, pursuing any discrimination claim, or cooperating in related investigations."  (Id, ¶ 65.)

7

As concerns the internal complaint procedure, employees are strongly encouraged to notify "their direct supervisor or another supervisor . . . of any concerns that [they] have regarding what [they] perceive to be unlawful discrimination, harassment, or retaliation." (Id, ¶ 66.) All such complaints are "taken seriously" and "[e]mployees should not feel obligated to file complaints with their immediate supervisor first before bringing the matter to the attention to either their District or Regional Leaders, or directly to [the] Human Resources Department." (Id, ¶ 67.) And, "[a]ny reported allegations of harassment, discrimination or retaliation will be investigated promptly. The investigation may include individual interviews with the parties involved and, where necessary, with individuals who may have observed the alleged conduct or may have other relevant knowledge." (Id, ¶ 68.)

There is no evidence that Plaintiff ever availed herself of Clean Rite's complaint procedure for alleged discrimination, harassment, or retaliation. (Id, ¶ 69.) Instead, she complained only about alleged missing wages, which Clean Rite immediately remedied. (Id, ¶ 28.)

### III.   ARGUMENT

#### A.   Summary Judgment Standard

A party is entitled to summary judgment when, as here, there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)  When addressing a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *L.B. Foster Co. v. Am. Piles, Inc*., 138 F.3d 81, 87 (2d Cir. 1998). Whether any disputed issue of fact exists is for the Court to determine. *See Balderman v. United States Veterans Admin*., 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex v. Catrett*, 477 U.S.

8

317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once such a showing has been made, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." *El-Nahal v. Yassky*, 835 F.3d 248, 256 (2d Cir. 2016), cert. denied, 137 S. Ct. 2187, 198 L. Ed. 2d 255 (2017) (internal quotation marks and citations omitted).  The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

"[N]ot every disputed factual issue is material in light of the substantive law that governs the case." *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 195 (S.D.N.Y. 2018).  Instead, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. And, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Thus, to withstand a summary judgment motion, "sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant." *In re Namenda*, at 195.

### B.   Plaintiff's Race Discrimination Claims Must Be Dismissed

Plaintiff alleges race discrimination claims in violation of race discrimination in violation of 42 U.S.C. § 1981 ("1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

To state a viable race discrimination claim, Plaintiff must demonstrate that she (1) is a member of a protected class, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129

(2d Cir. 2012); *see also Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir.2013) (the burden of proof and production for employment discrimination claims under Title VII, the NYSHRL and § 1981 are identical) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n. 3, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003); *John v. Dep't of Info. Tech. & Telecomms.*, No. 06-CV-13119 (PAC), 2008 U.S. Dist. LEXIS 85614, at *9 (S.D.N.Y. Oct. 23, 2008) (NYCHRL claims analyzed under same standards as Title VII).

Plaintiff race discrimination claims fail from the start. Although she is a member of a protected class and suffered an adverse action, her theft from the cash register at the White Plains Road location is misconduct, and she was terminated solely for that reason. *See Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009) ("on-the-job misconduct . . . always constitute[s] [a] legitimate and nondiscriminatory reason[] for terminating employment . . .") (internal citation omitted); *Jones v. Yonkers Pub. Sch.*, 326 F. Supp. 2d 536, 543-44 (S.D.N.Y. 2004) (concluding that misconduct and violation of employer's rules and procedures are legitimate, nondiscriminatory reasons for termination); *Gordon v. Kadet*, 943 N.Y.S.2d 535 (App. Div. 2012) (defendant "offered legitimate, non-discriminatory reasons for plaintiff's termination since she had engaged in misconduct"). Because theft is plainly misconduct warranting termination, and there is no conceivable inference of discrimination based on this record, Plaintiff's race discrimination claims must be dismissed.

### C. Plaintiff's Disability Discrimination Claims Fail, As a Matter Of Law

Plaintiff alleges disability discrimination in violation of the NYSHRL and NYCHRL. A claim for discrimination based on disability under NYSHRL and NYCHRL is subject to the burden-shifting analysis established in *McDonnel Douglas Corporation v. Green*, 411 U.S. 792 (1973). See McMillan v. City of New York, 711 F.3d 120 (2d Cir. 2013). That is, Plaintiff must establish: (1) she had a "disability" within the meaning of the statute, (2) the employer had notice

of the disability, (3) she was otherwise qualified to perform the essential functions of her job with reasonable accommodation, and (4) the employer refused to make a reasonable accommodation, or Plaintiff suffered an adverse employment action due to her disability. *See Romanello v. Shiseido Cosmetics Am. Ltd.*, No. 00-CV-7201, 2002 U.S. Dist. LEXIS 18538, at *23-24 (S.D.N.Y. Sept. 30, 2002); *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999).

Plaintiff admitted to Ferris that her requested accommodations were in place when he visited the location on March 11, 209. (Defs. Stmt., ¶ 1.)  And, Plaintiff cannot escape that she was fired solely for taking money from the register – her alleged disability was not a factor in that decision.  Because there is no evidence or allegation to demonstrate that Plaintiff's purported disability was a motivating factor in her termination, her disability discrimination claims must be dismissed.  *See, e.g., Wega v. Ctr. for Disability Rights Inc.*, 395 F. App'x 782, 784 (2d Cir. 2010) (upholding grant of summary judgment where the plaintiff failed to offer any evidence that "he was fired because of [his] disability")*Schenk v. Verizon*, No. 10-CV-6281 (GBD), 2011 U.S. Dist. LEXIS 147168, 2011 WL 6778284, at *2 (S.D.N.Y. Dec. 20, 2011). (dismissing disability discrimination claim because the plaintiff she failed to allege facts that created an inference that her disability motivated the challenged conduct); *Schafer v. Hicksville Union Free Sch. Dist.*, No. 06-CV-2531, 2011 U.S. Dist. LEXIS 35435, at *19 (E.D.N.Y. Mar. 31, 2011) (dismissing disability discrimination claim where there was "no evidence that [the plaintiff] was treated unequally because of his [alleged] disability").

### D. Plaintiff Has Not And Cannot Allege A Viable Retaliation Claim

Plaintiff alleges retaliation claims in violation of section 1981, Title VII, the NYSHRL, and the NYCHRL.  In order to establish a *prima facie* case of retaliation under section 1981, Title VII and the NYSHRL, Plaintiff must show that (1) she engaged in protected activity; (2) Clean Rite was aware of the protected activity; (3) an adverse employment action followed; and (4) a

causal connection between the protected activity and the adverse employment action existed. *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000); *Greene v. Trs. of Columbia Univ.*, 234 F. Supp. 2d 368, 380 (S.D.N.Y. 2002).

The "retaliation inquiry under the [NY]CHRL is 'broader than its federal [and state] counterpart[s]." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (citing *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 71, 872 N.Y.S.2d 27 (1st Dep't 2009)). Retaliation in any manner is prohibited under the NYCHRL, "and '[t]he retaliation . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment.'" Id. (citing N.Y. City Admin. Code § 8-107(7)).

The elements required to assert a *prima facie* claim of retaliation under the NYCHRL are identical to the federal elements, "except that the plaintiff need not prove any 'adverse' employment action; instead, [she] must prove that something happened 'that would be reasonably likely to deter a person from engaging in protected activity.'" *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009) (internal citations omitted); *see also Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d 739, 970 N.Y.S.2d 789, 791 (N.Y. App. Div. 2013) ("a plaintiff must show that (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct").

Notwithstanding the more liberal standard afforded by the NYCHRL, Plaintiff's retaliation claims still fail. Clean Rite disputes that Plaintiff ever complained about perceived discrimination or harassment, and there is no evidence outside of Plaintiff's own self-serving allegations that she

did, in fact, complain.  Consequently, there is no "protected activity" and Plaintiff's retaliation claims may be dismissed for this reason alone.

Even assuming, *arguendo*, that Plaintiff complained about Ashmeade, Ferris, or both, there is still no causal connection.  The contemporaneous evidence proves that Plaintiff stole money from the register, and no viable retaliation claim can flow from these facts.  *See Rodas v. Estee Lauder Cos., Inc.*, 2010 NY Slip Op 33199(U) (Sup. Ct. Oct 12, 2010) (dismissing NYCHRL retaliation claim due to intervening acts of misconduct); *Adeniji v. Administration for Children Servs.*, 43 F. Supp. 2d 407, 433 (S.D.N.Y. 1999) ("[i]n this Circuit, an inference of causation is defeated . . . if there was an intervening causal event that occurred between the protected activity and the allegedly retaliatory discharge."); *see also Pacenza v. IBM Corp.*, 04-CV-5831 (PGG), 2009 U.S. Dist. LEXIS 29778, at *37 (S.D.N.Y. 2009) ("[c]ourts have held that violation of an employer's policies is a legitimate reason for an employee's termination").

### E. To The Extent Plaintiff Is Attempting To Allege Claims for Harassment/Hostile Work Environment, Those Claims Must Be Dismissed

In order to establish a hostile work environment claim under the NYSHRL, Plaintiff must produce evidence that the complained of conduct (1) was objectively severe or pervasive – that is, it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that Plaintiff subjectively perceived as hostile or abusive; and (3) created such an environment because of Plainitff's race.  *Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141 (2d Cir. 2012) (internal citations omitted) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).  Stated another way, Knox must produce evidence that "the workplace was 'so severely permeated with discriminatory intimidation, ridicule, and insult, that the terms and conditions of h[is] employment were thereby altered.'"  *Mills v. S. Conn. State Univ.*, 519 F. App'x 73, 74, (2d Cir. 2013) (quoting *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013)).  Although

a single severe incident may support a claim for hostile work environment, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id. (quoting *Alfano v. Costello*, 294 F. 3d 365, 374 (2d Cir. 2002)).

Under the NYCHRL, a plaintiff claiming hostile work environment need only demonstrate that he or she was treated "less well than other employees" because of the relevant characteristic. *Torres v. City of New York*, No. 18-CV-3644 (LGS), 2019 WL 1765223 (S.D.N.Y. Apr. 22, 2019). The conduct alleged must, however, exceed "what a reasonable victim of discrimination would consider petty slights and trivial inconveniences" *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 80 (2009), and "mere personality conflicts" will not suffice to establish a hostile work environment, *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 819 N.E.2d 998 (2004).

Plaintiff alleges that Ashmeade, a colleague of the same Jamaican descent, referred to her as "hood," "ghetto," and a "Yankee," and that Ferris told her that she looked like Aunt Jemima and "talked Jamaican." Even assuming, *arguendo*, that every comment alleged by Plaintiff is true – which Defendants strenuously refute – those comments do not approach the level necessary to maintain a hostile environment claim. *See Little v. NBC*, 210 F. Supp. 2d 330, 389 (S.D.N.Y. 2002) ("[i]solated remarks or occasional episodes of harassment will not merit relief under [the NYSHRL]; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive."); *see also Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (finding no hostile work environment even though the plaintiff's supervisor made negative statements about her, was impatient and used harsh tones with her, avoided her when she was nearby, declined to meet with her, required her to recreate reasonable accommodation logs, replaced her at meetings, wrongfully reprimanded her, and increased her reporting schedule); *Dawson v. Bumble & Bumble*, 246 F. Supp. 2d 301, 329 (S.D.N.Y. 2003),

14

aff'd, 398 F.3d 211 (2d Cir. 2005) ("[C]onduct founded on 'the ordinary tribulations of the workplace, such as the use of abusive language . . . and occasional teasing' is not actionable under the discrimination laws"); *Waters v. Gen. Bd. of Glob. Ministries*, 769 F. Supp. 2d 545, 554 (S.D.N.Y. 2011) ("As many courts have recognized, where the plaintiff and the individual whose conduct is at issue are members of the same protected class, the inference that the conduct constitutes harassment or discrimination is weakened"); *Green v. Harris Publ'ns, Inc.*, 331 F. Supp. 2d 180, 194 (S.D.N.Y. 2004) ("ghetto" remark not sufficiently severe or pervasive to enable plaintiff to overcome the defendants' motion for summary judgment).  For these reasons, Plaintiff cannot maintain a viable harassment/hostile environment claim, and that claim must be dismissed.

### F.     Plaintiff's Aiding And Abetting Claims Are Nonstarters

Plaintiff alleged aiding and abetting claims against Defendants Ken Ferris and Cecilia Ashmeade.  Although undersigned counsel no longer represents these individuals, we note that an aiding and abetting claim against an individual employee depends on employer liability.  Where no violation of the NYSHRL or NYCHRL may be established, as here, individuals cannot be held liable for aiding and abetting their own violations.  *See Godwin v. Sirva, Inc.*, 291 F. Supp. 3d 245, 254 (E.D.N.Y. 2018); *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012) ("as the employee's liability [under NYSHRL] necessarily hinges on that of the employer, the employer must be held liable for an individual to also be held liable . . .").  Consequently, Plaintiff's aiding and abetting claims should be dismissed.

### G.     Plaintiff's Wage And Hour Claims Are Unsupported By The Record, And Must Be Dismissed

Plaintiff alleges claims for violation of the minimum wage provisions of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), failure to pay overtime in violation of the FLSA and NYLL, failure to provide notice of rate of pay and regular pay day in violation

of the NYLL, and failure to provide wage statements in violation of the NYLL. These claims are wholly refuted by the record, as follows. First, Plaintiff was paid $15.00 per hour for all hours worked under forty hours in a one week period. (Defs. Stmt., ¶ 53.) Second, Plaintiff was paid at the premium overtime rate of $22.50 for all hours worked over forty hours in a one week period. (Id, ¶ 56.) Third, Plaintiff acknowledged that she received a Notice of Acknowledgement of Pay Rate and Pay Day in English – her self-identified native language – on December 17, 2018. (Id, ¶ 59.) And, finally, in compliance with NYLL 195(3), Plaintiff was provided with Pay Summaries for each pay period. (Id, ¶ 62.) Simply put, Plaintiff's wage and hour claims are not borne by the record and, like the rest of her claims, must be dismissed on summary judgment.

## IV.     **CONCLUSION**

For all of the foregoing reasons, this Court should grant Defendants' motion for summary judgment, dismiss Plaintiff's Complaint in its entirety with prejudice, and award Defendants such other and further relief that the Court deems just and proper.

| | |
|---|---|
| Dated: April 29, 2022<br>New York, New York | Respectfully submitted,<br>GORDON & REES LLP<br><br>By: _s/ Jeremi L. Chylinski, Esq._<br>       Jeremi L. Chylinski, Esq.<br><br>One Battery Park Plaza, 28th Floor<br>New York, NY 10004<br>P: (212) 269-5500<br>F: (212) 269-5505<br>jchylinski@grsm.com<br><br>*Attorneys For Defendants CRC Management Co., LLC,*<br>*Clean Rite Centers, LLC, 3533 Boston Road, LLC,*<br>*and 4352 Bronx Boulevard Laundromat, LLC* |